UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE L. BRAZELL,<br><br>  Plaintiff,<br><br>v.<br><br>CLIFF J. UDDENBERG, Commander,<br>United States Navy Commandant,<br>Naval Brig Miramar,<br><br>  Defendant. | Case No.: 19-CV-1084 JLS (MSB)<br><br>**ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 15) |

Presently before the Court is Petitioner Jesse Brazell's ("Petitioner") Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. 2241 ("Am. Pet.," ECF No. 15). Also before the Court is the Government's ("Government" or "Respondent") Answer and Return to the Amended Petition and Motion for Summary Judgment ("Answer," ECF No. 16), and Petitioner's Traverse ("Resp.," ECF No. 19). The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). ECF No. 18. Having carefully considered the Parties' arguments and the relevant law, the Court **DENIES** the Amended Petition for Writ of Habeas Corpus.

///

///

## BACKGROUND

The Court thoroughly recounted the factual and procedural background of this matter in its Order Denying Petition for Writ of Habeas Corpus. ECF No. 14 at 1–3. The Court incorporates by reference the background as set forth therein.

## STANDARD OF REVIEW

Federal district courts have jurisdiction to review habeas corpus petitions challenging military convictions pursuant to 28 U.S.C. § 2241. *See Burns v. Wilson*, 346 U.S. 137, 139 (1953). While determinations made in military proceedings are final and binding on all courts, *see* 10 U.S.C. § 876, the federal civil courts' jurisdiction over a petition for habeas corpus from a military prisoner is not displaced, *see Schlesinger v. Councilman*, 420 U.S. 738, 744–45 (1975). A petitioner must exhaust all possible military remedies before seeking a writ of habeas corpus in federal courts. *See Noyd v. Bond*, 395 U.S. 683, 693–96 (1969); *see also Middendorf v. Henry*, 425 U.S. 25, 29 n.6 (1976) ("[T]he exhaustion requirement is designed to protect the military from undue interference by the federal courts.").

"The federal courts possess authority to consider and determine habeas corpus challenges to the jurisdiction of the military courts." *See Willenbring v. United States*, 559 F.3d 225, 231 (4th Cir. 2009). A federal court's review is normally limited to whether the court-martial gave the petitioner's claims full and fair consideration. *See Burns*, 346 U.S. at 142. However, in matters involving constitutional challenges, the Ninth Circuit has held that the court must conduct an independent review of the matter. *See Hatheway v. Secretary of Army*, 641 F.2d 1376, 1380 (9th Cir. 1981), *cert. denied*, 454 U.S. 864 (1981) ("The Burns plurality does not preclude civil court consideration of the constitutional [equal protection, due process, and First Amendment] defects."). Collateral relief from a judgment of a court-martial may be sought where the judgment is void or without res judicata effect because of a "lack of jurisdiction or other equally fundamental defect." *Schlesigner*, 420 U.S. at 746–47, 753; *see Davis v. Marsh*, 876 F.2d 1446, 1448 (9th Cir. 1989) (stating that court-martial determinations are "collaterally reviewable for

constitutional or jurisdictional error"); *Fricke v. Sec'y of Navy*, 509 F.3d 1287, 1290 (10th Cir. 2007) (stating that the federal court's "review of jurisdictional issues is independent of the military courts' consideration of such issues"); *Calley v. Callaway*, 519 F.2d 184, 203 (5th Cir. 1975) ("Military court-martial convictions are subject to collateral review by federal civil courts on petitions for writs of habeas corpus where it is asserted that the court-martial acted without jurisdiction, or that substantial constitutional rights have been violated."). Here, because Petitioner asserts that the court-martial lacked subject-matter jurisdiction, the Court will review Petitioner's claim de novo.

## DISCUSSION

"In an unbroken line of decisions from 1866 to 1960, [the U.S. Supreme Court has] interpreted the Constitution as conditioning the proper exercise of court-martial jurisdiction over an offense on one factor: the military status of the accused." *Solorio v. United States*, 483 U.S. 435, 439 (1987) (citations omitted). The Court previously found, and Petitioner does not contest, that Petitioner was a member of the United States Air Force on active duty at the time of the charged offenses. Nonetheless, Petitioner asserts that the court-martial lacked subject-matter jurisdiction over his offense because the U.S. Japan Status of Forces Agreement ("SOFA" or "U.S.–Japan SOFA") assigned the primary right to exercise jurisdiction over Petitioner's offenses to Japan. *See generally* Am. Pet. Petitioner argues the United States court-martial did not have subject-matter jurisdiction because Japan did not waive its right of first refusal to prosecute Petitioner. *See generally id.*

The Court previously found that "Petitioner has no standing to allege his conviction in a U.S. court-martial constituted a violation of the U.S.–Japan SOFA." ECF No. 14 at 6. In his Amended Petition, Petitioner asserts that he is not required to show standing to assert that his court-martial lacked subject matter jurisdiction. Am. Pet. at 10. The Government responds that "the U.S. retains subject matter jurisdiction over any service member who violates the UCMJ's criminal provisions in Japan, even if Japan criminalizes the same misconduct." Answer at 8. Furthermore, the Government reasserts that "Petitioner 'has no standing to object to "violations" of the SOFA and even if he did, the court-martial still

would have jurisdiction because of the [Petitioner's] active duty status.'" *Id.* at 12 (quoting *United States v. Choisnard*, No. ACM 36654, 2008 WL 2853036, at *4 (A.F. Ct. Crim. App. July 15, 2008)).

Thus, the question before the Court is whether an alleged failure to follow the SOFA's procedures in a case of concurrent jurisdiction stripped the court-martial of subject-matter jurisdiction. The U.S.–Japan SOFA is a bilateral security agreement pursuant to Article VI of the Treaty of Mutual Cooperation and Security Between the United States of America and Japan and covers, among other things, criminal jurisdiction over offenses committed by U.S. service members in Japan. *See generally* Agreement Under Article VI of the Treaty of Mutual Cooperation and Security: Facilities and Areas and the Status of United States Armed Forces in Japan, U.S.–Japan, Jan. 19, 1960, T.I.A.S. No. 4510, 11 U.S.T. 1652. The U.S.–Japan SOFA allocates exclusive and concurrent jurisdiction between Japan and the United States for offenses committed in Japan by U.S. service members. *Id.* Here, it is uncontested that neither the United States nor Japan had exclusive jurisdiction as referenced in the SOFA at Article XVII ¶ 2 because both the United States and Japan criminalize the sexual abuse of minors, the crimes charged in this case. *See* Am. Pet. at 6. Accordingly, the United States and Japan had concurrent jurisdiction.

In matters of concurrent jurisdiction, Article XVII ¶ 3 of the SOFA allocates one state "primary right to exercise jurisdiction." U.S.–Japan SOFA, Art. XVII ¶ 3. The SOFA provides that Japanese authorities have the primary right to exercise concurrent jurisdiction where the purported victim of the offense is the dependent of a contractor, as is the case here. *See id.* In cases of concurrent jurisdiction, certain "rules" shall apply. *Id.* Specifically, "[i]f the State having the primary right decides not to exercise jurisdiction, it shall notify the authorities of the other State as soon as practicable." *Id.* ¶ 3(c). Petitioner contends this language "places a condition precedent on the exercise of courts-martial jurisdiction in Petitioner's case." Am. Pet. at 13 (citing U.S.–Japan SOFA, Art. XVII ¶ 3(b)). Petitioner argues that in matters of concurrent jurisdiction under the SOFA, "[o]ne

sovereign, and only one sovereign, may exercise its contingent jurisdiction, based upon the affirmative exercise of jurisdiction or waiver of that jurisdiction in favor of the other." *Id.* at 9 (emphasis omitted). Petitioner's proposed reading of Article XVII, however, conflates concurrent and exclusive jurisdiction.

In Petitioner's case, jurisdiction is not exclusive but concurrent, meaning the United States retains the plenary right to exercise all disciplinary jurisdiction for violations of the Uniform Code of Military Justice ("UCMJ"). *See* U.S.–Japan SOFA, Art. XVII ¶¶ 1(a), 3(c) ("[T]he military authorities of the United States shall have the right to exercise within Japan all criminal and disciplinary jurisdiction conferred on them by the law of the United States over all persons subject to the military law of the United States."); *see also Solorio*, 483 U.S. at 439. Petitioner was charged with offenses punishable by Article 120b of the UCMJ. The court-martial's exercise of jurisdiction is consistent with Supreme Court precedent, which has held that multiple sovereigns may simultaneously have jurisdiction. *See, e.g.*, *Ponzi v. Fessenden*, 258 U.S. 254, 261 (1922). Which sovereign will exercise jurisdiction is a matter of foreign policy, but the court-martial is not powerless to act unless and until Japan cedes jurisdiction according to the procedure in the SOFA. *See, e.g.*, *United States v. Kerns*, 75 M.J. 783, 795 (A.F. Ct. Crim. App. 2016) ("[W]hen a [service] member is subject to both UCMJ and state (or foreign) jurisdiction, the Air Force as a matter of policy will coordinate with the relevant civilian prosecutor to determine which sovereign will *exercise* the jurisdiction it already possesses." (emphasis in original)).

The SOFA's concurrent jurisdiction scheme did not strip the court-martial of jurisdiction over Petitioner's offense. Even assuming Japan and the United States did not follow the "rules" regarding concurrent jurisdiction under the SOFA in Petitioner's case, Petitioner does not have standing to assert a violation of the SOFA. *See Choisnard*, WL 2853036, at *4 ("[Appellant] has no standing to object to 'violations' of the SOFA and even if he did, the court-martial still would have jurisdiction because of the appellant's active duty status."). Circuit courts confronted with alleged violations of other SOFA agreements have held that such issues are not for the courts to decide, but instead must be

addressed diplomatically between the two nations. *See, e.g.*, *Patterson v. Wagner*, 785 F.3d 1277, 1285 (9th Cir. 2015) ("The [U.S.–South Korea] SOFA's provisions thus establish a diplomatic conflict resolution scheme with no role for the judiciary."); *Matter of Burt*, 737 F.2d 1477, 1488 (7th Cir. 1984) ("[I]t is well settled that the recourse for such a treaty violation in these circumstances is diplomatic, not judicial."); *Holmes v. Laird*, 459 F.2d 1211, 1222 (D.C. Cir. 1972) ("[T]he rights [appellants] claim [arise pursuant ]to the provisions of an international agreement[,] the enforcement mechanism of which is diplomatic recourse only."). Such is the case here. The U.S.–Japan SOFA outlines a diplomatic mechanism for conflict resolution between the United States and Japan. *See* U.S.–Japan SOFA, Art. XXV. The Rules for Courts-Martial further support this interpretation:

> Where an act or omission is subject to trial by court-martial and by one or more civil tribunals, foreign or domestic, the determination which nation, state, or agency will exercise jurisdiction is a matter for the nations, states, and agencies concerned, and is not a right of the suspect or accused.

R.C.M. 201(d)(3).

The court-martial had subject-matter jurisdiction because Petitioner was a member of the United States Air Force on active duty at the time of the charged offenses. The alleged failure of Japan and the United States to follow the procedure outlined in the SOFA for matters of concurrent jurisdiction does not deprive the court-martial of subject-matter jurisdiction. Whether the United States was in violation of its obligations under the SOFA when the court-martial exercised its jurisdiction prior to Japan's waiver is a diplomatic issue not suited for decision in this Court. Accordingly, the Court **DENIES** the Amended Petition.

///

///

///

///

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** Petitioner's 28 U.S.C. § 2241 writ of habeas corpus petition. The Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated: September 6, 2022

Hon. Janis L. Sammartino
United States District Judge